306 A.2d 176.

ABRAHAM D. KONOFF *vs.* KENNETH M. LANTINI *et al.*

JUNE 28, 1973.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

Doris, J. This is a civil action to recover damages for breach of contract.

The case was tried to a Superior Court justice, sitting without a jury, and a decision was rendered for the defendants. Judgment was thereafter entered. It is from that judgment that plaintiff has appealed to this court.

The record establishes that on December 5, 1963, Jordan B. and Myrna Kirshenbaum, husband and wife, were owners of certain real estate located on Goddard Street in the city of Providence. On that date, they executed a mortgage on said property to Industrial National Bank. The mortgage note was in the amount of $6000, payable with interest, in regular monthly installments. On February 1, 1964, the Kirshenbaums conveyed said property by deed to plaintiff, Konoff, who assumed payment of the mortgage note to Industrial National Bank. The plaintiff made monthly payments on the mortgage to the bank until August 24, 1964, when he conveyed the property to defendants, who assumed payment of the mortgage debt to Industrial National Bank. On October 13, 1966, defendants conveyed the property to one Howard Bove, who assumed payment of the mortgage debt to Industrial National Bank. Thereafter, Bove conveyed the property to parties by the name of Belen, who in turn later conveyed to parties by the name of Schofield, the title holders at the time of the foreclosure sale. Both the Belens and the Schofields assumed payment of the mortgage debt to Industrial National Bank.

The record discloses, and it is undisputed, that Industrial National Bank at no time released Jordan and Myrna Kirshenbaum from their indebtedness on the original mortgage. It is also established that the payments on the mortgage were made on a more or less regular basis to Industrial National Bank by the various parties until 1968.

In March 1968, the Schofields made the last mortgage payment to Industrial National Bank, who thereafter no-

tified Jordan and Myrna Kirshenbaum that the mortgage note was in default and that the bank would begin proceedings for foreclosure under the authority contained in the mortgage deed.

Jordan and Myrna thereupon paid the outstanding balance due on the mortgage to the bank, and Industrial National Bank, acting on instructions from them, assigned the mortgage to Selwyn M. Kirshenbaum, brother of Jordan. It is well to note here that at some time, not clearly stated in the record but prior to the date of the foreclosure sale, the mortgaged property was vandalized, thereby diminishing its market value.

Thereafter, Selwyn M. Kirshenbaum, as mortgagee by virtue of the aforesaid assignment, notified both plaintiff and defendants by letter that the owners of record of the property had defaulted in their payments to Industrial National Bank, and that the bank had assigned the mortgage on which they were liable for payment to him. He further notified them that a foreclosure sale would be held on July 18, 1968, and that in the event a deficiency resulted from said sale they, having assumed the mortgage indebtedness, would be held responsible for the deficiency.

In the notification letters it was further suggested that if the parties desired to be relieved of responsibility under the mortgage, they should attend the foreclosure sale and bid the amount due on the mortgage, plus fees and costs of the sale. The defendants chose to ignore the suggestions contained in this letter and did not attend the foreclosure sale. The plaintiff, however, did attend the sale and bid the amount of $4700, which was the sole bid made at the sale. The plaintiff's bid was accepted and a foreclosure deed in the amount of $4700 was executed to plaintiff by Selwyn M. Kirshenbaum on July 19, 1968. At trial, plaintiff produced two real estate agents as witnesses who testified as to the value of the property. One witness

placed a value of $2200 on the property. The other placed a value of $2500 on the property.

It is the difference between the sum of $4700 bid and paid by plaintiff at the foreclosure sale, and the $2500 testified to as the fair market value at the time of the sale, that plaintiff claims as damages from defendants, contending that their failure to make the mortgage payments they had assumed to make, rendered them liable to plaintiff.

The trial justice, in a written decision, viewed the action as one where plaintiff was seeking to recover a deficiency. She further pointed out that if there is a deficiency between the bid price at which the property was sold and the amount of the mortgage, the mortgagee could maintain an action against the mortgagor for the difference. Here, the trial justice continued, plaintiff purchased the property at a foreclosure sale for an amount equal to the mortgage debt, accrued interest and incidental expenses. She therefore concluded that there was no deficiency for which the mortgagor was liable to the mortgagee.

The plaintiff argues rather vigorously that the trial justice misconceived the thrust of his complaint, in that he was not a mortgagee to whom the proceeds of a foreclosure sale would be paid in satisfaction of a mortgage debt, but rather he was in the position of a mortgagor who was obligated by his assumption of the mortgage to pay the full indebtedness, an agreement which, although shared by his successors in title, nevertheless continued to be binding upon plaintiff. He further argues that he met his obligation to the mortgagee by bidding $4700 at the sale, and that thereupon plaintiff was entitled to proceed against defendant, who had assumed liability by reason of his assumption of the mortgage debt. In other words, plaintiff contends that he was not claiming a deficiency, but was suing for a breach of contract seeking damages resulting from defendants' failure to make the mortgage payment

which they were obligated to make by reason of their assumption of the mortgage.

We feel that plaintiff accurately perceives the nature of this action. This suit is not on the mortgage note, but it is for breach of contract. At the time of the conveyance from plaintiff to defendants, defendants entered into an assumption agreement with plaintiff, whereby defendants agreed to pay the mortgage indebtedness. Section 3[1] of that agreement provides that defendants' obligation is unaffected by any payments made by plaintiff to the holder of the mortgage. This section merely conforms to the generally accepted rule that a mortgagor, after conveying the mortgaged property to a person who assumes the mortgage, can, upon default of the mortgage obligation, pay the debt and then sue the assuming grantee for reimbursement. *See* Annot. 76 A.L.R. 1191 (1932); Osborne, *Mortgages* §259 at 516-19 (2d ed. 1970).

The defendants assumed the mortgage as consideration for purchasing the property in question from plaintiff. They specifically agreed to bind themselves and any successors or assigns to pay the mortgage. They, in effect, agreed to hold plaintiff harmless for any damage which plaintiff might suffer from the failure of defendants or any

---

[1]"3. That the undersigned will remain liable for payment of the mortgage indebtedness and performance of the mortgage covenants and agreements so long as the mortgage indebtedness remains undischarged. Such liability shall not be affected by any alienation of the mortgaged premises, whether voluntary or otherwise, or by any act of or transaction between the holder of the mortgage and the original mortgagor or any alienee, it being agreed that the holder of the mortgage, without notice to or demand upon the undersigned, may accept from the original mortgagor or any alienee payments of principal, interest (in advance or otherwise), or other sums on account of the mortgage indebtedness or the obligations under the mortgage covenants and agreements, may make agreements with, may grant extensions of time to or may release or otherwise deal generally with the original mortgagor or any alienee, without in any manner affecting the obligation of the undersigned hereunder."

subsequent grantee to pay the mortgage. In other words, the contract of assumption includes, in essence, a contract of indemnification. In the instant case, plaintiff, at the foreclosure sale, purchased the property for the amount of the mortgage balance. He did this in order to discharge his liability on the mortgage note. However, plaintiff introduced evidence to show that the property was worth less than the amount due on the mortgage. If that is true, then plaintiff has suffered damages and consequently can recover from defendants for failure to insure that the mortgage was paid. *Accord, Jacobs* v. *Kupperstein,* 112 Conn. 607, 153 A. 656 (1931).

Our interpretation of this action is in conformity with our decision in *Rendine* v. *Catoia,* 52 R. I. 140, 158 A. 712 (1932). In that case, Rendine sold mortgaged property to Catoia, who failed to make a payment. The mortgagee sued Rendine, who settled the suit by paying the balance. Rendine then sued Catoia. The court found that "[t]he present action is not on the note but for a breach of contract. The agreement of the defendants was to assume the mortgage and to pay the same * * * An action lies for every breach of contract. The breach having been proved, the only question that remains is the amount of damages to be allowed." *Id.* at 142, 158 A. at 713. Similarly, in this case, defendants contracted with plaintiff to assume and pay the mortgage. This they have not done. Therefore, plaintiff has a cause of action for breach of contract, and the case should be remanded to determine his damages.

Since the trial justice viewed this case as a deficiency action, the record does not include any finding as to the value of the property at the time of the foreclosure sale. We are, therefore, unable to determine the damages sustained by the plaintiff.

The appeal of the plaintiff is sustained, and the cause is remanded to the Superior Court for a new trial.

Mr. Justice Joslin did not participate.

*Samuel A. Olevson,* for plaintiff.

*Aram A. Arabian,* for defendants.